**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LEONARD THOMAS CARSTEN,

        Petitioner,                        Civil No. 05-CV-71507-DT
                                                  HONORABLE LAWRENCE P. ZATKOFF

v.                                       UNITED STATES DISTRICT JUDGE

BARRY DAVIS,

        Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**

        Leonard Thomas Carsten, ("Petitioner"), presently confined at the Kinross Correctional

Facility in Kincheloe, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254, challenging his state court conviction for first-degree premeditated murder, contrary

to M.C.L.A. 750.316. [1]  For the reasons stated below, the petition for writ of habeas corpus is

**DENIED**.

**I.  DISCUSSION**

        Petitioner was convicted following a jury trial in the Clare County Circuit Court.  This Court

recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of

Appeals' opinion, which are presumed correct on habeas review. *See Monroe v. Smith,* 197 F. Supp.

2d 753, 758 (E.D. Mich. 2001):

        The evidence indicated that the victim shared a close friendship with defendant's girl
        friend and anticipated living with her in a house defendant was building for his girl

---

[1]  Petitioner was incarcerated at the Carson City Correctional Facility in Carson City, Michigan when he originally filed his habeas petition and the original respondent was Kurt Jones.   On August 1, 2005, this Court ordered that the caption of the case be amended to reflect that the correct respondent is Barry Davis, petitioner's current warden.  The Court also permitted petitioner to amend his petition to delete several unexhausted claims.

friend and himself. On the night of the killings, the three were all drinking heavily at a cabin owned by defendant's cousin. According to the testimony, an intense argument erupted among them and turned to whether the victim would live with defendant and his girl friend. The victim counseled defendant's girl friend to leave defendant and return with her to Montana. Therefore, the evidence regarding defendant's relationship with the victim immediately before her homicide indicates that defendant intentionally killed her for her interference in his and his girl friend's relationship.

Testimony indicates that the three left the cabin while the argument continued, and according to a statement defendant provided police, he drove the two women away in his van. The evidence indicated, however, that defendant turned aside from the route home and then turned the van off a dirt road into a field. Moving a victim to a more secluded area strongly suggests premeditation and deliberation. Defendant admitted that he owned the knife that caused the victim's injuries and had used it earlier that day. After the victim's death, defendant engaged in activities designed to hide his crime and himself, including disposing of evidence and changing his appearance. These actions also indicate premeditation and deliberation. Therefore, defendant's actions before and after the killing indicate he premeditated and deliberated.

Finally, the circumstances of the killing itself indicate premeditation and deliberation. Defendant inflicted several defensive wounds on the victim's hands, and his deadly cuts fell on the back of her neck. Defensive wounds and cuts to vital areas, such as the neck, indicate premeditation. Furthermore, the evidence indicated that defendant received a serious cut near where he stopped the van, walked south several hundred feet to where his girl friend crashed the van trying to get help, and then returned north to where his victim had ventured into the road. According to the physical evidence, the jury could conclude that defendant then dragged the victim from the road into a nearby wooded area and inflicted another severe wound there. Defendant's trek from one end of the crime scene to the other and back provided him with ample time to take the required "second look" and reconsider his actions. Therefore, the prosecutor presented sufficient evidence to support defendant's first-degree murder charge.

*People v. Carsten,* No. 239448, * 1-2 (Mich.Ct.App. October 16, 2003)(internal citations omitted).

Petitioner's conviction was affirmed on appeal. *Id; lv. den.* 470 Mich. 857; 679 N.W. 2d 678

(2004). Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. There was insufficient evidence to convict [Petitioner] of first-degree murder for the death of Georgia Ostwald.

2

II. The trial court reversibly erred by failing to instruct the jury on the specific instances of past violence by Georgia Ostwald, thereby denying [Petitioner of] his constitutional rights to a fair trial and to present a defense.

III. The prosecutor's misconduct deprived [Petitioner] of his due process right to a fair trial.

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III.  DISCUSSION

### A.  Claim # 1.  The sufficiency of evidence claim.

3

2:05-cv-71507-LPZ-DAS   Doc # 30   Filed 10/03/06   Pg 4 of 11   Pg ID 1796

Petitioner first claims that there was insufficient evidence of premeditation and deliberation to support his conviction for first-degree murder.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The Court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F. 3d 594, 617 (6th Cir. 2002). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F. 3d 780, 788-89 (6th Cir. 2003)(citation omitted).

To constitute first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F. 3d 598, 602 (6th Cir. 2002)(*citing People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001)(*citing to People v. Anderson*, 209 Mich. App. 527, 537; 531 N. W. 2d 780 (1995)). Premeditation may be established through evidence of the following factors:

> 1. the prior relationship of the parties;
> 2. the defendant's actions before the killing;
> 3. the circumstances of the killing itself;
> 4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F. 3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App. at 527.

Under Michigan's first-degree murder statute, the interval between the thought and action

4

should be long enough to give a reasonable person sufficient time to subject his actions to a "second look" in order to prove premeditation and deliberation. *See Alder v. Burt,* 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003)(*citing to People v. Morrin,* 31 Mich. App. 301; 187 N.W. 2d 434 (1971)).  "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Id.*  Therefore, a sufficient time lapse to provide an opportunity for a "second look" may be merely seconds, minutes, or hours or more, dependant on the totality of the circumstances surrounding the killing. *See People v. Berthiaume*, 59 Mich. App. 451, 456; 229 N. W. 2d 497 (1975).  Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 198 Mich. App. 123, 128; 497 N. W. 2d 202 (1993).

In the present case, there was sufficient evidence to establish that petitioner had the requisite premeditation and deliberation required for first-degree murder.  On the night of the murder, an argument broke out between petitioner, his girlfriend, and the victim.  The victim advised petitioner's girlfriend to leave petitioner and move with her to Montana.  A rational trier of fact could infer that petitioner intentionally killed the victim for interfering into his relationship with his girlfriend.  There was also evidence that when petitioner drove the victim and his girlfriend away from his brother's home, he drove the van off a dirt road into a field.  Under Michigan law, moving a victim to a secluded or hidden area is indicative of premeditation and deliberation. *See People v. Johnson,* 460 Mich. 720, 733; 597 N.W. 2d 73 (1999).  Under Michigan law, premeditation may also be logically inferred from wounds inflicted on vital parts of the victim's body. *See Lundberg v. Buchkoe,* 338 F. 2d 62, 69 (6th Cir. 1964).  The victim received several fatal

5

wounds to the back of her neck, which would support a finding of premeditation. *Berry,* 198 Mich. App. at 128-29. The victim also received several defensive wounds, which likewise, is evidence of premeditation and deliberation. *Johnson,* 460 Mich. at 733. Finally, there was also evidence that petitioner disposed of evidence and changed his appearance subsequent to the murder. These activities would also support a finding of premeditation and deliberation. *See Marsack v. Howes*, 300 F. Supp. 2d 483, 492 (E.D. Mich. 2004).

In the present case, there was sufficient evidence for a rational trier of fact to determine that petitioner committed the murder with premeditation and deliberation. Although there was evidence presented which could have supported petitioner's self-defense or defense of others theory, this Court must view the evidence in a light most favorable to the prosecution and the jury was not required to accept petitioner's version of the facts. *See Williams v. Jones,* 231 F. Supp. 2d 586, 595 (E.D. Mich. 2002). A reasonable trier of fact could have inferred under the circumstances that petitioner's decision to kill the victim was premeditated and deliberate. Therefore, the Michigan Court of Appeals' determination that there was sufficient evidence to support petitioner's first-degree murder conviction was not an unreasonable application of clearly established federal law so as to entitle petitioner to habeas relief. *Scott,* 302 F. 3d at 603. Petitioner is not entitled to habeas relief on his first claim.

### B. Claim # 2. The jury instruction claim.

Petitioner next claims that the trial court erred in failing to instruct the jury on the specific instances of past acts of violence by the victim according to CJI 7.23, despite the fact that he presented evidence regarding the victim's violent nature.

In determining whether jury instructions violate a defendant's constitutional due process

rights to a fair trial, the reviewing court must consider the charge to the jury in its entirety. *See Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973). To rise to the level of a constitutional violation, the alleged erroneous instruction must so affect the entire trial that a conviction violates due process. For purposes of a constitutional claim, it is insufficient that the instructions are undesirable, erroneous, or even universally condemned. *See Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). In general, errors in instructions of a trial court to a jury in a state criminal trial are not reviewable in federal habeas corpus proceedings. They are not constitutional errors unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law. *See Long v. Smith*, 633 F. 2d 18, 23 (6th Cir. 1981).

In the present case, although the trial court failed to instruct the jurors on CJI 7.23 concerning the victim's past incidents of violence, the trial court advised the jurors on three occasions that in determining whether petitioner reasonably believed that either he or his girlfriend were in serious danger of being killed or seriously injured, so as to support petitioner's self-defense or defense of others theory, the jury could consider whether petitioner was aware of any prior violent acts or threats of the victim. (Tr. 12/12/01, pp. 150, 152, 155). Because the jury instructions in their entirety adequately informed the jurors that they could consider the victim's past acts of violence in determining whether petitioner's use of deadly force was reasonable either to protect himself or his girlfriend, the trial court's failure to give CJI 7.23 did not deprive petitioner of a fair trial. *See e.g. Sloan v. United States,* 527 A. 2d 1277, 1283-84 (D.C. 1987). Moreover, the trial court's failure to give this instruction concerning past acts of violence by the victim did not deprive petitioner of a fair trial in violation of due process, in light of the fact that petitioner's counsel addressed the victim's violent and aggressive nature in his opening and closing arguments and

presented substantial evidence of her violent and aggressive nature during trial. *See United States ex. rel. Bosek v. Peters,* 837 F. Supp. 902, 911 (N.D. Ill. 1992).  Petitioner is not entitled to relief on his second claim.

### C.  Claim # 3.  The prosecutorial misconduct claim.

Petitioner lastly claims that the prosecutor violated his due process rights by not revealing until trial that petitioner had made disparaging remarks about the victim and his girlfriend to Officer Cathy Ingall until the first day of trial.  Ingall testified at trial that petitioner referred to the victim and his girlfriend as "fat hogs" at the time of his arrest.   On cross-examination, Ingall acknowledged that she had failed to put petitioner's comments into her initial police report. Defense counsel moved to strike Ingall's testimony, but the trial court denied his request.

To the extent that petitioner is claiming that the prosecutor violated state discovery rules, he would not be entitled to habeas relief.  A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle,* 291 F. 3d 416, 441 (6th Cir. 2002).

To the extent that petitioner is contending that the violation of the discovery order violated his due process rights, this claim must fail also.  Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).  There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *See Strickler v. Greene*, 527 U.S.

8

263, 281-82 (1999).

Petitioner's *Brady* claim fails for several reasons. First, Officer Ingall disclosed petitioner's disparaging remarks about the victim and his girlfriend during petitioner's trial. *Brady* generally does not apply to the delayed disclosure of exculpatory information, but only to a complete failure by the prosecutor to disclose such information. *See United States v. Davis,* 306 F. 3d 398, 421 (6th Cir. 2002)(internal citations omitted). If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant is prejudiced by its nondisclosure. *See United States v. Word*, 806 F. 2d 658, 665 (6th Cir. 1986); *See also United States v. Benc*s, 28 F. 3d 555, 560-61 (6th Cir. 1994). The Sixth Circuit noted that "[T]he Supreme Court rejected the claim that the duty to disclose hinges on the usefulness of the material to pretrial preparation. Such a standard would 'necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense.'" *Bencs,* 28 F. 3d at 560, n. 5 (*quoting Agurs,* 427 U.S. at 112, n. 20).

In the present case, any claim that the late disclosure of these discovery materials may have precluded defense counsel from adequate trial preparation is non-cognizable pursuant to *Agurs. See Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004)(citing *Bencs,* 28 F. 3d at 561). In addition, any claim that the belated disclosure of this evidence hindered petitioner's ability for effective cross-examination lacks any substance, because petitioner has failed to offer any explanation on how the tardy disclosure of this evidence hampered his ability to cross-examine Officer Ingall. *Id.*

Moreover, petitioner has failed to offer any evidence or argument to show that this evidence was exculpatory. The burden is on a habeas petitioner to prove that evidence that is required to be

9

disclosed to him under *Brady* was not disclosed to him. *See Coe v. Bell*, 161 F. 3d 320, 344 (6th Cir. 1998). Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *Burns,* 328 F. Supp. 2d at 724. The failure to turn over inculpatory evidence does not violate *Brady. See United States v. Henry,* 71 Fed. Appx. 493, 502 (6th Cir. 2003). Petitioner has failed to show that any of this evidence exculpated him of this crime. Petitioner is therefore not entitled to habeas relief on his claim.

## IV.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.** The Court declines to issue a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court will also deny petitioner leave to appeal in forma pauperis, because the appeal would be frivolous. *See Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  October 3, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on October 3, 2006.

10

s/Marie E. Verlinde
Case Manager
(810) 984-3290